Rebecca L. Hill, 06246
rebecca.hill@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111-2047
Telephone:  (801) 323-5000

David Simantob (*to be admitted pro hac vice*)
David.Simantob@wilsonelser.com
Shannon L Santos (*to be admitted pro hac vice*)
Shannon.Santos@wilsonelser.com
Wilson Elser Moskowitz Edleman & Dicker LLP
555 S. Flower Street – Suite 2900
Los Angeles, CA 90071-2407
Telephone: (213) 443-5101

*Attorneys for Sentinel Insurance Company*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SENTINEL INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>vs.<br><br>B GSE GROUP, LLC; BRYAN BULLERDICK; JOHN BEAN TECHNOLOGIES CORPORATION,<br><br>     Defendants. | **COMPLAINT FOR DECLARATORY RELIEF**<br><br><br>Case No. 2:22-cv-00684-JNP<br><br>Judge Jill N. Parrish |

Plaintiff Sentinel Insurance Company ("Sentinel") hereby petitions this Court for a

Declaratory Judgment against Defendants B GSE Group LLC ("B GSE"), Bryan Bullerdick, and

John Bean Technologies Corporation ("JBT") (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1.      Sentinel brings this action for declarations that it has no duty to defend B GSE or Mr. Bullerdick for the action entitled *John Bean Technologies Corp. v. B GSE Group, LLC, Bryan Bullerdick*, United States District Court, District of Utah, Case No. 1:17-cv-00142-CW ("Underlying Action") under five insurance policies Sentinel issued to B GSE (collectively "Policies"). Sentinel further seeks a declaration that it is entitled to reimbursement for amounts it has paid in defense of B GSE and Mr. Bullerdick in the Underlying Action.

**2.**      Sentinel seeks a declaration that it has no duty to indemnify any judgment obtained by JBT in the Underlying Action under the Policies.

## THE PARTIES

3.      Sentinel is a corporation formed under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

4.      Sentinel is informed and believes and on that basis alleges that B GSE is a limited liability corporation, where the members reside in the State of North Carolina. B GSE has admitted in the Underlying Action that its sole members, Mr. Bullerdick and Scott Dills, are residents of North Carolina and that its principal place of business is in Huntersville, North Carolina.

5.      Sentinel is informed and believes and on that basis alleges that Mr. Bullerdick is an individual residing in North Carolina based on his admission in the Underlying Action.

6.      Sentinel is informed and believes and on that basis alleges that JBT is a corporation formed under the laws of the State of Delaware with its principal place of business in Chicago, Illinois based on its admission in the Underlying Action.

## JURISDICTION AND VENUE

7.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure, Rule 57 to resolve an actual controversy between the parties as set forth herein.  This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between Sentinel and Defendants and there is more than $75,000 in controversy.

8.      Venue is proper within the United States District Court, District of Utah, pursuant to 28 U.S.C. § 1391(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claim occurred in this jurisdiction as this is where the Underlying Action is venued.

## THE POLICIES

9.      Sentinel issued Policy No. 22 SBM UF2141 to B GSE, effective from December 14, 2012 to December 14, 2013 ("2012-2013 Policy").  A true and correct copy of the 2012-2013 Policy is attached as **Exhibit "A"** hereto.

10.     The 2012-2013 Policy provides primary coverage pursuant to Business Liability Coverage Form [Form SS 00 08 04 05] in pertinent part as follows:

    **A.**    **COVERAGES**

    **1.**    **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance

applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. …

\* \* \*

**b.**     This insurance applies:

\* \* \*

**(2)**     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

**B.     EXCLUSIONS**

**1.     Applicable To Business Liability Coverage**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

\* \* \*

**(2)**     "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

**b.     Contractual Liability**

\* \* \*

**(2)**     "Personal and advertising injury"

4

for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. ...

\* \* \*

**p.**    **Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**    Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)**    Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

**(3)**    Arising out of a criminal act committed by or at the direction of the insured;

**(4)**    Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

\* \* \*

**(7)**    *(as amended by "Amendment of Exclusions and Definition – Personal and Advertising Injury" Endorsement [Form SS 41 62 06 11] ("PAAI Endorsement"))*

**(a)**    [A]rising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

**(b)**    Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any

5

intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

**(1)**    Infringement, in your "advertisement", of:

    **(a)**    Copyright;

    **(b)**    Slogan; or

    **(c)**    Title of any literary or artistic work; or

**(2)**    Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

\* \* \*

**(10)**    Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

\* \* \*

**(12)**    Arising out of:

\* \* \*

    **(c)**    Content from a web site of others displayed within a frame or border on your web site.  Content includes

information, code, sounds, text, graphics or images;

\* \* \*

**C.   WHO IS AN INSURED**

**1.**   If you are designated in the Declarations as:

\* \* \*

**c.**   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

\* \* \*

**G.   LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\* \* \*

**17.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**   False arrest, detention or imprisonment;

**b.**   Malicious prosecution;

**c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor; (*as amended by PAAI Endorsement*)

**d.**   Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**   Oral, written or electronic publication of material that violates a person's right of privacy;

7

**f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

**h.** Discrimination that results in humiliation or other injury to the feelings or reputation of a natural person. (*as amended by PAAI Endorsement*)

(Exh. "A" hereto, 2012-2013 Policy, EXH. A-21, 23, 28, 30, 40, 42, 43, 49, 50.)

11.    The 2012-2013 Policy also contains the "Cyberflex Coverage" Endorsement

[Form SS 40 26 06 11], which modifies the primary coverages in pertinent part as follows:

This endorsement modifies coverage under the Business Liability Coverage Form for your web site or internet related activities.

**A.**    Exclusion **1.p. "Personal and Advertising Injury"** (Section **B. - EXCLUSIONS**) is modified as follows:

**1.**    Paragraphs **(4)**, **(5)** and **(7)** are deleted and replaced by the following:

**(4)**    Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

* * *

**(7)**    **(a)**    Arising out of any violation of any actual or alleged infringement or violation of intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

**(b)**    Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit",

regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

**(a)** Infringement in your "advertising" of:

**(i)** Copyright;

**(ii)** Slogan; or

**(iii)** Title of any literary or artistic work; or

**(b)** Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

\* \* \*

**B.** Section **G.** – LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended as follows:

**1.** Paragraph **b.** of definition **1.** "advertisement" is deleted and replaced by:

"Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

**b.** The Internet;

**2.** Paragraphs **f.** and **g.** of the definition of "personal and advertising injury" are deleted and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**f.** Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

9

**g.**   Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

**3.**   The following is added to the definition of "personal and advertising injury":

As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.

**4.**   The following definition is added:

"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

(Exh. "A" hereto, 2012-2013 Policy, EXH. A-48.)

12.   The 2012-2013 Policy contains the "Umbrella Liability Provisions" [Form SX 80 02 04 05], which provides umbrella coverage in pertinent part as follows:

**SECTION I - COVERAGES**

**INSURING AGREEMENTS**

**A.**   **Umbrella Liability Insurance**

**1.**   We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". ...

* * *

**2.**   This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

        **a.**    The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"; ... .

* * *

**B.**    **Exclusions**

This policy does not apply to:

* * *

**3.**    **Contractual Liability**

Liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

**4.**    **Personal and Advertising Injury** (*as amended by "Following Form Endorsement – Personal and Advertising Injury" Endorsement [Form SX 24 33 06 10]*)

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply.  Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.

* * *

**14.**    **Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". ...

* * *

**SECTION III – WHO IS AN INSURED**

A.      If you are doing business as:

                                        * * *

3.      A limited liability company, you are an "insured".  Your
        members are also "insureds", but with only respect to the
        conduct of your business.  Your managers are "insureds",
        but only with respect to their duties as your managers.

                                        * * *

**SECTION VII – DEFINITIONS**

**Except as otherwise provided in this section or amended by
endorsement, the words or phrases that appear in quotation marks
within this policy shall follow the definitions of the applicable
"underlying insurance" policy.**

(Exh. "A" hereto, 2012-2013 Policy, EXH. A-80, 82, 83, 85, 91, 108.)

13.      Sentinel issued renewal policies to B GSE for the periods of December 14, 2013

to December 14, 2014 ("2013-2014 Policy"), December 14, 2014 to December 14, 2015 ("2014-

2015 Policy"), December 14, 2015 to December 14, 2016 ("2015-2016 Policy"), and December

14, 2016 to December 14, 2017 ("2016-2017 Policy").  True and correct copies of the 2013-2014

Policy, the 2014-2015 Policy, the 2015-2016 Policy, and the 2016-2017 Policy are attached as

**Exhibits "B" through "E"** hereto.

14.      The quoted language for the primary coverage from the 2012-2013 Policy is

found in the 2013-2014 Policy and the 2014-2015 Policy.  (Exh. "B" hereto, 2013-2014 Policy,

EXH. B-24, 26, 31, 33, 43, 45, 46, 51-53; Exh. "C" hereto, 2014-2015 Policy, EXH.C-27, 29,

34, 36, 46, 48, 49, 51-53.)   For the 2015-2016 Policy and the 2016-2017 Policy, the PAAI

Endorsement from the 2012-2013 Policy was removed and replaced with the "Business Liability

Coverage Form Amendatory Endorsement" [Form  SS  00  60  09  15].   The pertinent policy

provisions quoted above for the primary coverages remain the same, except that subsection **h.** of the definition of "personal and advertising injury" was removed.  (Exh. "D" hereto, 2015-2016 Policy, EXH. D-28, 29, 56, 58, 63, 65, 75, 77, 78, 86; Exh. "E" hereto, 2016-2017 Policy, EXH. E-33, 35, 40, 42, 52, 54, 55, 57, 58, 65.)

15.     The quoted language for the umbrella coverage from the 2012-2013 Policy is found in the remaining Policies.  (Exh. "B" hereto, 2013-2014 Policy, EXH. B-83, 85, 86, 88, 94, 109; Exh. "C" hereto, 2014-2015 Policy, EXH.C-81, 83, 84, 86, 92, 105; Exh. "D" hereto, 2015-2016 Policy, EXH. D-99, 101, 102, 104, 110, 124; Exh. "E" hereto, 2016-2017 Policy, EXH. E-97, 99, 100, 102, 108, 122.)

## THE CLAIM

16.     On September 1, 2017, the Underlying Action was filed.   A copy of the Complaint, without exhibits, is attached as **Exhibit "F"** hereto.

17.     On March 16, 2018, JBT filed its First Amended Complaint ("FAC").  A true and correct copy of the FAC, without exhibits, is attached as **Exhibit "G"** hereto.

18.     Throughout the Underlying Action, JBT argued it was a manufacturer and supplier of ground support equipment and services for the air transportation industry.  (Exh. "F" hereto, Complaint, ¶ 2, EXH. F-2; Exh. "G" hereto, FAC, ¶ 2, EXH. G-2.)  JBT alleged that B GSE was an authorized distributor for JBT and Mr. Bullerdick was an employee of JBT between March 2011 and April 2014, which includes the time B GSE was an authorized JBT distributor, until Mr. Bullerdick resigned to work for B GSE directly.  (Exh. "F" hereto, Complaint, ¶¶ 8-9, 25-26, EXH. F-3, 6; Exh. "G" hereto, FAC, ¶¶ 8-9, 25-26, EXH. G-3, 6.)

19.     In the Underlying Action, JBT alleged that B GSE and/or Mr. Bullerdick altered or modified communications in order to misrepresent B GSE's capabilities/relationship with JBT and to misrepresent JBT products as belonging to B GSE.  (Exh. "F" hereto, Complaint, ¶¶ 11, 48-49, 51, EXH. F-3, 10, 11; Exh. "G" hereto, FAC, ¶¶ 11, 74-75, 77, 79, EXH. G-3, 17-19.)  In July 2017, JBT claimed to have discovered a scheme involving theft and deception for the purpose of profiting off JBT's reputation.  (Exh. "F" hereto, Complaint, ¶ 12, EXH. F-3; Exh. "G" hereto, FAC, ¶ 12, EXH. G-4.)  The Complaint further alleged that B GSE's website incorporates misrepresentations by showing JBT products and projects and claiming they were B GSE projects.  (Exh. "F" hereto, Complaint, ¶¶ 86-87, EXH. F-19; Exh. "G" hereto, FAC, ¶¶ 117-118, EXH. G-28.)  B GSE's website also allegedly includes false statements and misrepresentations in the text and attachments in order to give potential consumers a false impression.  (Exh. "F" hereto, Complaint, ¶¶ 93, 95, EXH. F-22, 23; Exh. "G" hereto, FAC, ¶¶ 124, 126, EXH. G-31, 32.)  In the Complaint, JBT alleged that B GSE submitted a false trademark application.  (Exh. "F" hereto, Complaint, ¶¶ 110-111, EXH. F-27.)  The allegations related to this claim were omitted from the FAC.

20.     The Complaint alleged that the purported wrongful conduct of B GSE and Mr. Bullerdick included "(a) stealing, using and disclosing JBT's trade secrets, (b) breaching contracts with JBT relating to confidentiality and other employment obligations, (c) passing off JBT test reports and product certifications as if they applied to BGSE's own products, (d) falsifying safety certificates, (e) falsifying third party technical compliance certifications, (f) improperly copying JBT's technical specification documents, (g) passing off photos and descriptions of JBT's products as BGSE's products in advertising and promotional material, (h)

infringing JBT's registered trademarks on BGSE's website, which improperly drives traffic to BGSE's website, (i) fraudulently claiming rights and involvement in the design of JBT's products that BGSE distributed or resold, and (j) fraudulently seeking registration of a trademark."  (Exh. "F" hereto, Complaint, ¶ 13, EXH. F-4.)  Most of these allegations were reflected in the FAC except that "fraudulently seeking registration of a trademark" was replaced with "(j) defaming JBT and its products and services, and (k) tortuously interfering with JBT's business relationships."  (Exh. "G" hereto, FAC, ¶ 13, EXH. G-4.)

21.     The Complaint in the Underlying Action alleged causes of action for (1) federal misappropriation of trade secrets against B GSE and Mr. Bullerdick, (2) state misappropriation of trade secrets against B GSE and Mr. Bullerdick, (3) federal unfair competition and false designation of origin against B GSE, (4) federal unfair competition and false advertising against B GSE, (5) federal trademark infringement against B GSE, (6) breach of contract for a confidentiality agreement against Mr. Bullerdick, (7) breach of contract of a non-disclosure agreement against B GSE, and (8) breach of contract of a distribution agreement against B GSE. The FAC added a ninth cause of action for defamation and a tenth cause of action for tortious interference, both alleged against B GSE and Mr. Bullerdick.  The FAC sought an injunction, monetary damages, interest, attorneys' fees, and costs.

22.     On January 25, 2018, Sentinel agreed to defend B GSE in the Underlying Action under the 2012-2013 Policy pursuant to a reservation of rights.  Sentinel further agreed to defend Mr. Bullerdick under the 2012-2013 Policy pursuant to a reservation of rights to the extent he qualified as an insured under the Policies.

23.     In the reservation of rights letter, Sentinel specifically advised of a number of coverage issues that impacted coverage under the Policies.

24.     On August 13, 2020, the Court granted B GSE and Mr. Bullerdick's Motion for Summary Judgment as to the fourth and ninth causes of action for unfair competition and defamation.

25.     The Underlying Action proceeded to trial on September 26, 2022.  On October 6, 2022, the Amended Verdict Form was filed.  The verdict form does not track the causes of action asserted in the FAC.

26.     The jury awarded $323,256 to JBT on the first and second causes of action for misappropriation of trade secrets.  The jury also awarded $323,256 to JBT on the third cause of action for unfair competition.  Finally, the jury awarded $323,256 to JBT on the fifth, sixth, and seventh causes of action.  (The verdict form identifies these causes of action as breach of contract even though the fifth cause of action in the FAC is for trademark infringement.)  The verdict form identifies the eighth cause of action as tortious interference with prospective economic advantage and found liability in the amount of $201,777 ($96,664, $43,181, and $61,932) against B GSE and Mr. Bullerdick.  The jury also found "by clear and convincing evidence" that B GSE and/or Mr. Bullerdick's conduct was willful or malicious.

27.     On October 6, 2022, the Verdict Form on Punitive Damages was also filed, awarding punitive damages to JBT on the tortious interference claim in the amount of $500,000 against B GSE and $100,000 against Mr. Bullerdick.

**COUNT I – DECLARATORY RELIEF REGARDING**

**DUTY TO DEFEND UNDER THE PRIMARY COVERAGES**

**(Against B GSE and Bullerdick)**

28.     Sentinel hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

29.     There exists a genuine and bona fide dispute and an actual controversy and disagreement between Sentinel and B GSE and/or Mr. Bullerdick regarding whether Sentinel has a duty to defend them in connection with the Underlying Action under the primary coverages in the Policies.

30.     Sentinel is informed and believes and on that basis alleges that B GSE and/or Mr. Bullerdick contend that Sentinel has a duty to defend them in connection with the Underlying Action under the primary coverages in the Policies.

31.     Sentinel contends that the primary coverages in the Policies do not provide coverage for the defense of B GSE and Mr. Bullerdick in the Underlying Action.

32.     In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Sentinel has no duty to defend B GSE or Mr. Bullerdick in the Underlying Action under the Policies or applicable law, in whole or in part, for the following reasons:

      a.     The Policies do not afford coverage for injuries that occurs outside the applicable policy period;

      b.     The Underlying Action does not allege "bodily injury" or "property damage" to trigger coverage under the Policies;

c.      The Underlying Action does not allege one of the enumerated offenses of "personal and advertising injury" to trigger coverage under the Policies;

d.      The "Expected Or Intended Injury" exclusion in the primary coverages of the Policies bars any coverage for the claim;

e.      The "Contractual Liability" exclusion in the primary coverages of the Policies bars any coverage for the claim;

f.      In the primary coverages of the 2012-2013 Policy, the 2013-2014 Policy, and the 2014-2015 Policy, the "Personal And Advertising Injury" exclusion in Amendment of Exclusions and Definition – Personal and Advertising Injury [Form SS 41 62 06 11] bars any coverage for the claim;

g.      In the primary coverages of the 2015-2016 Policy and the 2016-2017 Policy, the "Personal And Advertising Injury" exclusion in Business Liability Coverage Form Amendatory Endorsement [Form SS 00 60 09 15] bars any coverage for the claim;

h.      The "Personal And Advertising Injury" exclusion in the Cyberflex Coverage endorsement in the primary coverages of the Policies bars any coverage for the claim; and

i.      Coverage is not afforded to Mr. Bullerdick for any alleged injuries that did not arise out of the conduct of B GSE's business.

33.     Sentinel also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude coverage for the duty to defend B GSE or Mr. Bullerdick under the Policies.

WHEREFORE, Sentinel requests that the Court enter an order of declaratory judgment finding: (1) that the primary coverages in the Policies do not provide coverage for any and all claims arising out of the Underlying Action; (2) that Sentinel has no duty to defend B GSE or Mr. Bullerdick in the Underlying Action pursuant to the primary coverages in the Policies; and (3) that Sentinel is entitled to other relief the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF REGARDING

## DUTY TO INDEMNIFY UNDER THE PRIMARY COVERAGES

### (Against All Defendants)

34.     Sentinel hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

35.     There exists a genuine and bona fide dispute and an actual controversy and disagreement between Sentinel and Defendants regarding whether Sentinel has a duty to indemnify any judgment in the Underlying Action under the primary coverages in the Policies.

36.     Sentinel is informed and believes and on that basis alleges that Defendants contend that Sentinel has a duty to indemnify any judgment in the Underlying Action under the primary coverages of the Policies.

37.     Sentinel contends that the primary coverages in the Policies do not provide coverage for any indemnity obligation of the Underlying Action.

38.     In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Sentinel has no duty to indemnify any judgment in the Underlying Action under the Policies or applicable law, in whole or in part, for the following reasons:

a.     The Policies do not afford coverage for injuries that occurs outside the applicable policy period;

b.     The Underlying Action does not allege "bodily injury" or "property damage" to trigger coverage under the Policies;

c.     The Underlying Action does not allege one of the enumerated offenses of "personal and advertising injury" to trigger coverage under the Policies;

d.     The "Expected Or Intended Injury" exclusion in the primary coverages of the Policies bars any coverage for the claim;

e.     The "Contractual Liability" exclusion in the primary coverages of the Policies bars any coverage for the claim;

f.     In the primary coverages of the 2012-2013 Policy, the 2013-2014 Policy, and the 2014-2015 Policy, the "Personal And Advertising Injury" exclusion in Amendment of Exclusions and Definition – Personal and Advertising Injury [Form SS 41 62 06 11] bars any coverage for the claim;

g.     In the primary coverages of the 2015-2016 Policy and the 2016-2017 Policy, the "Personal And Advertising Injury" exclusion in Business Liability Coverage Form Amendatory Endorsement [Form SS 00 60 09 15] bars any coverage for the claim;

h.     The "Personal And Advertising Injury" exclusion in the Cyberflex Coverage endorsement in the primary coverages of the Policies bars any coverage for the claim; and

i.  Coverage is not afforded to Mr. Bullerdick for any alleged injuries that did not arise out of the conduct of B GSE's business.

39.     Sentinel also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude coverage for the duty to indemnify any judgment in the Underlying Action under the Policies.

WHEREFORE, Sentinel requests that the Court enter an order of declaratory judgment finding: (1) that the primary coverages in the Policies do not provide coverage for any and all claims arising out of the Underlying Action; (2) that Sentinel has no duty to indemnify any judgment in the Underlying Action pursuant to the primary coverages in the Policies; and (3) that Sentinel is entitled to other relief the Court deems just and proper.

## COUNT III – DECLARATORY RELIEF REGARDING

## DUTY TO DEFEND UNDER THE UMBRELLA COVERAGES

### (Against B GSE and Mr. Bullerdick)

40.     Sentinel hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

41.     There exists a genuine and bona fide dispute and an actual controversy and disagreement between Sentinel and B GSE and/or Mr. Bullerdick regarding whether Sentinel has a duty to defend them in connection with the Underlying Action under the umbrella coverages in the Policies.

42.     Sentinel is informed and believes and on that basis alleges that B GSE and/or Mr. Bullerdick contend that Sentinel has a duty to defend them in connection with the Underlying Action under the umbrella coverages of the Policies.

43.     Sentinel contends that the umbrella coverages in the Policies do not provide coverage for the defense of B GSE or Mr. Bullerdick in the Underlying Action.

44.     In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Sentinel has no duty to defend B GSE or Mr. Bullerdick in the Underlying Action under the Policies or applicable law, in whole or in part, for the following reasons:

     a.     The Policies do not afford coverage for injuries that occurs outside the applicable policy period;

     b.     The Underlying Action does not allege "bodily injury" or "property damage" to trigger coverage under the Policies;

     c.     The Underlying Action does not allege one of the enumerated offenses of "personal and advertising injury" to trigger coverage under the Policies;

     d.     The "Contractual Liability" exclusion in the umbrella coverages of the Policies bars any coverage for the claim;

     e.     The "Personal and Advertising Injury" exclusion in the umbrella coverages of the Policies bars any coverage for the claim;

     f.     The "Expected Or Intended Injury" exclusion in the umbrella coverages of the Policies bars any coverage for the claim; and

g.      Coverage is not afforded to Mr. Bullerdick for any alleged injuries that did

not arise out of the conduct of B GSE's business.

45.     Sentinel also relies upon all additional terms, definitions, exclusions, conditions,

and endorsements in the Policies not specifically identified herein that potentially limit or

preclude coverage for the duty to defend B GSE or Mr. Bullerdick under the Policies.

WHEREFORE, Sentinel requests that the Court enter an order of declaratory judgment

finding: (1) that the umbrella coverages in the Policies do not provide coverage for any and all

claims arising out of the Underlying Action; (2) that Sentinel has no duty to defend B GSE or

Mr. Bullerdick in the Underlying Action pursuant to the umbrella coverages in the Policies; and

(3) that Sentinel is entitled to other relief the Court deems just and proper.

## COUNT IV – DECLARATORY RELIEF REGARDING

## DUTY TO INDEMNIFY UNDER THE UMBRELLA COVERAGES

### (Against All Defendants)

46.     Sentinel hereby incorporates and re-alleges the allegations in each of the

foregoing paragraphs as if fully set forth herein.

47.     There exists a genuine and bona fide dispute and an actual controversy and

disagreement between Sentinel and Defendants regarding whether Sentinel has a duty to

indemnify any judgment in the Underlying Action under the umbrella coverages in the Policies.

48.     Sentinel is informed and believes and on that basis alleges that Defendants

contend that Sentinel has a duty to indemnify any judgment in the Underlying Action under the

umbrella coverages of the Policies.

49.     Sentinel contends that the umbrella coverages in the Policies do not provide coverage for any indemnity obligation of the Underlying Action.

50.     In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Sentinel has no duty to indemnify any judgment in the Underlying Action under the Policies or applicable law, in whole or in part, for the following reasons:

   a.     The Policies do not afford coverage for injuries that occurs outside the applicable policy period;

   b.     The Underlying Action does not allege "bodily injury" or "property damage" to trigger coverage under the Policies;

   c.     The Underlying Action does not allege one of the enumerated offenses of "personal and advertising injury" to trigger coverage under the Policies;

   d.     The "Contractual Liability" exclusion in the umbrella coverages of the Policies bars any coverage for the claim;

   e.     The "Personal and Advertising Injury" exclusion in the umbrella coverages of the Policies bars any coverage for the claim;

   f.     The "Expected Or Intended Injury" exclusion in the umbrella coverages of the Policies bars any coverage for the claim; and

   g.     Coverage is not afforded to Mr. Bullerdick for any alleged injuries that did not arise out of the conduct of B GSE's business.

51.     Sentinel also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or

preclude coverage for the duty to indemnify any judgment in the Underlying Action under the Policies.

WHEREFORE, Sentinel requests that the Court enter an order of declaratory judgment finding: (1) that the umbrella coverages in the Policies do not provide coverage for any and all claims arising out of the Underlying Action; (2) that Sentinel has no duty to indemnify any judgment in the Underlying Action pursuant to the umbrella coverages in the Policies; and (3) that Sentinel is entitled to other relief the Court deems just and proper.

## COUNT V – DECLARATORY RELIEF REGARDING RIGHT TO SEEK
## REIMBURSEMENT OF AMOUNTS PAID IN DEFENSE
### (Against B GSE and Mr. Bullerdick)

52.     Sentinel hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

53.     There exists a genuine and bona fide dispute and an actual controversy and disagreement between Sentinel and B GSE and/or Mr. Bullerdick regarding whether Sentinel has a right to reimbursement of amounts paid in their defense in connection with the Underlying Action.

54.     As Sentinel has agreed to assume the defense of B GSE and Mr. Bullerdick in the Underlying Action, Sentinel has incurred and will continue to incur attorneys' fees and costs associated with the defense.

55.     Sentinel paid these amounts pursuant to a reservation of rights to seek reimbursement for the amounts paid.

56.     Sentinel contends that it has no duty to defend B GSE or Mr. Bullerdick in the Underlying Action under the Policies.  Thus, Sentinel contends that it has a right to seek reimbursement for any amounts paid toward uncovered claims, including the amounts Sentinel paid in defense of the Underlying Action pursuant to the Policies.

57.     Sentinel is informed and believes and on that basis alleges that B GSE and/or Mr. Bullerdick dispute that Sentinel has a right to seek reimbursement for the attorneys' fees and costs paid in defense of the Underlying Action pursuant to the Policies.

WHEREFORE, Sentinel requests that the Court enter an order of declaratory judgment finding: (1) that Sentinel has a right to seek reimbursement from B GSE and/or Mr. Bullerdick for any and all costs paid by Sentinel in their defense of the Underlying Action; and (2) that Sentinel is entitled to other relief the Court deems just and proper.

Dated this 26th day of October, 2022

Respectfully submitted,

/s/ *Rebecca L. Hill*
Rebecca L. Hill
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
(801) 323-5000
rebecca.hill@chrisjen.com

*Attorneys for Plaintiff*